[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: POST-TRIAL MOTION
The court recently wrote a decision concerning this matter and issued an injunction. Both sides have filed motions for reconsideration. After examining the complaint, the court concludes that the injunctive relief sought concerned the proposed erection of a wall of 105 feet in length from the street to the present northerly end of the picket fence. That this was the understanding of the plaintiff which led to the filing of this action is confirmed by her testimony on page ten of the transcript. Therefore, the court agrees with the request of both counsel that it vacate that part of its order which ruled that beyond the 105-foot point, that is, from the northerly end of the picket fence to the sea wall, a masonry wall could be constructed but it could be no higher than four feet. In vacating this portion of the order, the court does not intend or mean to imply that it takes any position regarding legal issues that might arise in future litigation that might arise over the construction of any fence or wall in the above referenced area.
The defendant also asks the court to reconsider its order insofar as it ordered that any wall could only be four feet high CT Page 496-T from the northerly end of the picket fence to a point eight feet to the north of the end of the picket fence. The defendant asks the court to permit any such wall to be five feet in height. The court has examined the photo exhibits and the testimony of Mrs. Sherman that the present height of the hedge, which is shown in the photo, is four to four and one-half feet in height. Based on this reexamination, the court will not change its order. The wall should be no more than four feet in height. If the wall is another foot high, it will impermissibly restrict the plaintiff's view and for all the reasons stated in its previous opinion, given the circumstances of this case that would not be appropriate.
This leads, in the court's opinion, to a much more difficult and perhaps disturbing question in light of what the court's clear intention was as expressed in its opinion. The plaintiff now says that despite ordering that any wall could be only four feet high from the northerly end of the picket fence to a point eight feet from the end of this fence, there still will be an obstruction of their view. At the motion to reargue it was suggested the wall should be four feet high for a 16-foot distance from the north end of the picket fence not for an eight foot distance as ordered by the court. In the memorandum attached to its motion for reargument, the plaintiff argues correctly that in its opinion and by its order "the court did not intend to CT Page 496-U narrow the viewing area any further than the existing view." That is true and the court interprets the plaintiff's position to be that although the relief granted will permit more of a view than would have been available if a six-foot wall were to be constructed, the relief ordered by the court would diminish the view the plaintiff presently has. It was not the court's intention to do that; the court, by its order, wanted the plaintiff to have the same view after the construction of any wall that she has at present.
The plaintiff goes on to say: "The 8-foot length was an" off the cuff' estimate by the appraiser. It was not elicited in direct testimony as a solution to the problem that a six-foot wall would create. Plaintiff did not request nor advocate a `step down' wall so there was no reason to establish the location of the point where 6 foot wall goes to four feet. (Page 2 of 12/23/1996 Memorandum).
A difficulty arises, however, because of the fact that the plaintiff's position at trial was based on an argument that construction of the wall would obstruct her view. Her appraiser testified her property values would be reduced due to the obstruction of the view. Even now the plaintiff's motion for reargument is based on concerns about the effect of the court order on the plaintiff's view. CT Page 496-V
The point is not so much whether at trial the plaintiff "advocated" a step wall. The point is that by the nature of the claim raised — interference with the view — an order envisaging a "step-down" wall was clearly before the court. The court explicitly referred to the possibility of or effect of a step down wall in a question it asked the plaintiff (pp. 35-36 of transcript). The plaintiff's witness, Mr. Freda, an appraiser, referred in his direct testimony about the effect of a "step down" wall on the present view of the plaintiff from the rooms at the side of plaintiff's house (p. 40 of transcript).
In argument at the end of the case, the court inquired whether it could order a "step down" wall since the only effective argument raised by the plaintiff was interference with the view (p. 105 of transcript). In response, counsel for the plaintiff said the following at pp. 106-107 of the transcript:
 "No, no, the point I'm bringing out that one of the cases I cited, the Checkko (ph) case (counsel referred to in DeCecco v. Beach, 174 Conn. 29, 1977)), I don't know who the judge was, but in the appeal they remarked that the trial court had the same kind of problem. The trial court told them to knock down four CT Page 496-W sections of their fence that went down to the river, in that case. And Justice Cotter approved that decision, and even allowed them, they could do it at that, break it off. I think that addresses the particular question you were asking."
The plaintiff seemed certainly to contemplate the power of the court to order a "step down" wall in light of the relief it requested.
The plaintiff also argues that the suggestion of an eight foot length to any four-foot high wall from the end of the picket fence was an "off the cuff" remark that was not "elicited in direct testimony." The court finds this difficult to understand. Mr. Freda is an appraiser. He was called to testify by the plaintiff. To place his testimony in context, it took place after the plaintiff testified and shortly after the court raised the possibility of a "step down" wall with the plaintiff. The following occurred on direct as set forth at page 40 of the transcript. "Q" represents a question posed by plaintiff's counsel. "A" represents the answer by Mr. Freda. Mr. Freda referred to a report he prepared that was introduced into evidence as Exhibit 4 and the following occurred:
"A . . . . And the lower page shows exactly the CT Page 496-X two windows, the bay windows that we were discussing, that are affected.
 And on the next page, Your Honor, shows the views I took from sitting from the kitchen window from the seat. And then the second picture was taken sitting on their couch in the family room out. I believe it shows the exact area of obstruction.
THE COURT: Where the arrows are pointing?
 THE WITNESS: Right, exactly. And a picture tells a thousand words.
 A And as was discussed, I feel that sort of a step wall, as you had mentioned, would not pose a problem, would not obstruct that portion of the view.
Q What is your reasoning on that opinion?
 A Obviously by the pictures you can tell. If you brought that six-foot wall all the way out, you're going to lose. You can see by the pictures the amount of view you're going to lose. If there was a step wall approximately four feet high maybe back six to eight CT Page 496-Y feet, that view I'm here to testify on would not be obstructed.
 Q Well, we're going on the assumption that we have the wall already there. What do you feel?
 A I feel that if the wall was built per specifications that I was given, it will block that view and it will deter from the value."
Since plaintiff's counsel was doing the questioning, it is difficult for it now to be said that the plaintiff was not contemplating, let alone advocating, a step down wall of four feet in height, some eight feet from the end of the picket fence as a way of preserving the view.
On cross examination of Mr. Freda by defense counsel, he was questioned in regard to his opinion of the effect of the eight foot stretch of wall at the height of four feet (transcript pp. 46 and 54). At page 45, the following occurred:
 "THE COURT: Counselor (referring to defense counsel), let me ask a question before I forget it. Assuming there was a step wall, how far back would the step wall have to be from the end of the CT Page 496-Z picket fence not to obstruct the view?
 THE WITNESS (Freda): Your Honor, I would have to measure.
THE COURT: Yes.
 THE WITNESS: But I would have to assume about eight feet to be safe.
THE COURT: Eight feet, okay.
 THE WITNESS: And lowered at least two feet if the hedges are four feet. (Emphasis added).
This was the plaintiff's witness and all this did not appear to the court to be off the cuff remarks. In fact, the court based its order on this testimony when it said that any masonry wall must only be from four feet high from the end of the picket fence to a point eight feet north.
The plaintiff filed a motion to reargue under P.B. § 204B. In her memorandum and at oral argument on this motion, counsel for the plaintiff argued that the court should conduct a view of the premises, something not requested at trial. The CT Page 496-AA plaintiff was prepared to present diagrams to show that the court's order did not in fact accomplish what the court intended — that the plaintiff should keep the same view from the side windows of her home and that the wall in no way interfere with that view. The plaintiff suggested that after conducting such a view the court should then change its order to state that the wall should be four feet high from the end of the picket fence for some greater distance than the eight feet ordered. In the alternative, the court should simply order that no wall be constructed that diminishes the present view from the two side bay windows of the plaintiff's home. The latter order would be unworkable and would offer no guidance to the parties. Treating the plaintiff's motion as a motion to reargue the court is confined to the evidence presented at trial and nothing presented by the plaintiff would, without more, justify the court in ordering that ;a wall running from the north end of the picket fence be no higher than four feet for a distance greater than eight feet from that end of the picket fence[1]. Based on this record, where would the court get the correct number from? Should it guess, 16 feet, 14 feet, 12 feet? Viewed simply as a motion to reargue, the court will deny it.
But in all fairness to the plaintiff, what really seems to be argued for here is a motion to reopen this civil judgment perhaps pursuant to § 52-212a of the General Statutes. CleanCT Page 496-BBCorporation v. Foston, 33 Conn. App. 197, 203 (1993). Apart from statutory considerations, as was said in Foston a court has "an inherent capacity to open judgments", id p. 203. The plaintiff seeks to present new evidence by way of a viewing and perhaps the presentation of charts so that the court may change its order and direct that the proposed wall be no higher than four feet for a specific distance that would be greater than eight feet that was ordered by the court.
What is peculiarly troubling to the court is the fact that in effect the plaintiff now argues that the evidence it now seeks to present will only ensure that the admittedly explicit intention of the court as set forth in its opinion — that any wall not diminish the plaintiff's present view from the side of their home — be properly effectuated. But the court cannot be an advocate to the point of ignoring the procedural rights of another party. In other words, the defendant here has rights; it was put through the time and expense of a trial at which it presented evidence to counter the evidence offered by the plaintiff. Both sides prepared post trial briefs for the court and waived argument. Now the plaintiff comes along dissatisfied with the court's decision, not because it went against her but because it did not accomplish all her goals and asks to present new evidence to get a more favorable judgment.
This is not a situation where a party seeks to open a CT Page 496-CC judgment after default. A full trial was had. This is not a situation where judgment was obtained by fraud, duress or mutual mistake, In re Baby Girl B 224 Conn. 263 283 (1992), Hill v.Hill, 39 Conn. App. 258, 264 (1995). This matter is an equitable action but we do not have here a situation where a change of circumstance not addressed by the court or the parties is involved, Coxe v. Coxe, 2 Conn. App. 543 (1984). There is no claim made that new evidence is involved or that evidence not available to the plaintiff at trial has been discovered. Plaintiff did not ask the court to view the premises involved and presented no evidence as to what length of wall at what height would obstruct the view other than that of her own witness, Mr. Freda, who supports the court's position and on whose testimony the specifics of the court's order was based. Neither is this a case where new evidence should be taken because after the evidence has closed, a trial memorandum for the first time raised an issue that obviously could not be responded to at trial, RedRooster Construction Co. v. River Associates Inc., 224 Conn. 563,574 (1993).
Under all these circumstances, the court will also then not grant what the plaintiff has called its motion to reargue but what the court will treat as a motion to reopen because if the premises of the plaintiff's position are accepted there would be no end to litigation and a party would be able to insulate itself CT Page 496-DD from the consequences of a freely arrived at trial decision when the basic dissatisfaction is not that it lost but that the litigation did not achieve as much as the party had hoped.
CORRADINO, J.